CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 126569)
Chief, Criminal Division

JEAN FUNDAKOWSKI (CABN 236255)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    FAX: (415) 436-7234
    Email: jean.fundakowski@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos. |
| Plaintiff, | 3:25-CR-00013 MMC (2025 Indictment)<br>3:05-CR-00324 MMC (Supervised Release Violation) |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| AQUIL PETERSON, | |
| Defendant. | Hearing Date:  March 11, 2026<br>Hearing Time: 2:15 p.m.<br>Courtroom:      Hon. Maxine M. Chesney |

### INTRODUCTION

In 2008, the defendant Aquil Peterson was sentenced to 264 months' imprisonment for aiding and abetting a murder.  After serving his 22-year sentence, he began a 3-year term of supervised release in June 2024 and was arrested just 3 months later for possession of a loaded firearm and ammunition and controlled substances.  At this point, the defendant has spent nearly half of his life in federal prison.  It is unclear what punishment can deter the defendant from committing crime, but it is clear that a substantial prison sentence is necessary to protect the public and promote respect for the law.

The defendant comes before the Court following a guilty plea to the single count of the captioned Indictment charging him with being a felon of possession of a firearm and ammunition, in violation of

UNITED STATES' SENTENCING MEMORANDUM   1
3:25-CR-00013 MMC

Title 18, United States Code, Section 922(g)(1).  He has also admitted to violating the terms of his supervised release from that 2008 case.  In accordance with the government's commitments in the Rule 11(c)(1)(B) Plea Agreement, the government respectfully requests that the Court sentence the defendant to a period of 46 months' imprisonment for the felon in possession charge in Case No. 25-CR-0013 MMC, forfeiture, and a $100 special assessment, to be followed by 3 years of supervised release. Probation concurs.  The government also requests that the Court sentence the defendant to 24 months' imprisonment for the supervised release violation in Case No. 05-CR-00324-MMC, to run concurrently with the sentence imposed in the new case.  The government has no objections to the Revised Presentence Report released on February 27, 2026 (the "PSR").

## I.    DEFENDANT'S OFFENSE CONDUCT AND CRIMINAL HISTORY

### A.    2024 Offense Conduct

On June 28, 2024, the defendant completed a 264-month federal sentence and began a 5-year term of supervised release.  Just 3 months into that 5-year term of supervision, the defendant was arrested for possession of a loaded firearm and ammunition, possession of controlled substances, and driving under the influence.

On September 30, 2024, a city of Berkeley parking enforcement officer observed the defendant hit a street sign while driving near 200 Berkeley Way in Berkeley, California.  PSR ¶ 6.  Berkeley Police Department officers responded to the scene and found the defendant standing outside of his car, leaning into the open driver side door and making suspicious movements in the direction of the passenger, Spuneisha Chapple.  *Id*.  Both the defendant and Ms. Chapple exhibited slurred speech and appeared intoxicated; the defendant had a cast on his left arm.  *Id*.  Officers detained the defendant and stopped Ms. Chapple, who was clutching her purse, from walking away from the vehicle.  *Id*.  Ms. Chapple refused to obey those instructions to stop and had to be restrained in handcuffs and placed under arrest. *Id*.

Officers searched Ms. Chapple's purse and discovered a 30-round extended magazine; a 9mm Taurus pistol, bearing serial number TBS61990, which was loaded with 1 round of ammunition; and a second magazine loaded with 14 rounds of ammunition.  *Id*. ¶ 7.  Ms. Chapple told officers that the firearm and ammunition belonged to her and that she obtained them for her self-defense.  *Id*.

Officers searched the defendant and found a plastic baggie containing five blue pills; a plastic baggie containing cocaine base; and a plastic baggie containing heroin. *Id*. Officers also found an empty bottle of tequila on the front passenger floorboard of the defendant's vehicle. *Id*.

Berkeley Police Department ran a records check on the recovered 9mm pistol, which they determined was not registered and was manufactured in Brazil. *Id*. ¶ 8. Berkeley Police Department also collected DNA samples from Ms. Chapple and the defendant to compare to DNA samples collected from the arsenal in Ms. Chapple's purse: the pistol trigger and trigger guard; the pistol handle/grip; the pistol slide; the magazine; and the extended magazine. *Id*. The Serological Research Institute determined that there was very strong support for the inclusion of the defendant's DNA in all five samples. *Id*.

The Alameda County Sherriff's Office Crime Laboratory examined the baggies of drugs seized from the defendant's person at the time of his arrest and determined they contained 11.03 net weight grams of cocaine base, 2.35 net weight grams of heroin, and five diazepam pills. *Id*. ¶ 10. The Berkeley Police Department report stated that based upon the arresting officer's experience, a typical dose of drugs can range from .1 to .25 grams in weight, and therefore the defendant possessed approximately 49 to 123 doses of cocaine base and 27 to 69 doses of heroin, amounts well beyond the quantities typical for personal use. *Id*. at Objections by the Defendant, ¶ 3. A blood draw taken after the defendant's arrest showed that his blood alcohol content measured .12%, well above the state legal limit of .08%, and was positive for benzodiazepines (diazepam and nordiazepam) and marijuana. *Id*. ¶ 10.

## B.    Criminal History

On May 28, 2008, the defendant, then age 25, was sentenced to 264 months' imprisonment for violation of 18 U.S.C. § 1959, Violent Crime in the Aid of Racketeering—Murder (VICAR—Murder). This was a particularly brutal and heinous crime. Per the 2008 Presentence Investigation Report, in 2005 the defendant was a member of a violent street gang called the Page Street Mob, also known as the PST or 778, that operated in the Western Addition neighborhood in San Francisco. PSR ¶ 30. The gang routinely engaged in acts of violence, including murder, attempted murder, witness retaliation and intimidation, and narcotics distribution. *Id*.

On August 3, 2002, the defendant and Dennis Cyrus, Jr. murdered Joseph Hearns on the orders

UNITED STATES' SENTENCING MEMORANDUM    3
3:25-CR-00013 MMC

of fellow gang member Lester Hogan, to punish Hearns for associating with a woman Hogan considered to be his wife. *Id*. The defendant, armed with an AK-47 automatic assault rifle, and Cyrus, Jr., armed with two handguns, forced their way into Hearns' apartment, where they ordered him to strip naked and beat him with their weapons. *Id*. The defendant put the barrel of his AK-47 in Hearns' mouth and used the assault rifle to beat him. *Id*. The men then ordered Hearns to walk down to the street, where they forced him to lie down on the ground. *Id*. The defendant walked to the edge of the building line and yelled for Cyrus, Jr. to follow. *Id*. Instead of leaving, Cyrus Jr. executed Hearns with a single gunshot to the head. *Id*. Afterwards, the defendant bragged to witnesses that he "was vicious with an AK." *Id*. When San Francisco Police Department officers arrested the defendant, they recovered the AK-47 and found Hearns' DNA on the weapon. *Id*.

## II.    PROCEDURAL HISTORY

### A.    2008 Conviction

On January 29, 2008, the defendant pleaded guilty to VICAR—Murder, in violation of 18 U.S.C. §1959, a Class A felony. Case No. 05-CR-334 MMC, Dkt. 790-91. In the Plea Agreement for that case, the defendant admitted to the facts of Hearns' murder set forth above, as well as that he aided and abetted the murder to maintain and increase his position in the Page Street Mob. Dkt. 791 at ¶ 2. On May 28, 2008, the defendant was sentenced to 264 months' imprisonment, to be followed by 5 years of supervised release. Dkt. 869. The defendant served his sentence and began his term of supervised release on June 28, 2024. Dkt. 1769. Berkeley Police arrested the defendant on September 30, 2024. *Id*.

### B.    2025 Indictment and Supervised Release Violation

On October 1, 2024, the Court approved a petition from the U.S. Probation Office for a warrant against the defendant for violation of supervised release. *Id*. The warrant contained three charges: (1) that on September 30, 2024, the defendant violated California laws prohibiting felons from possessing a firearm; carrying a loaded firearm in public; carrying a concealed weapon in a vehicle; driving under the influence of alcohol; possession of narcotics for sales; possession of cocaine base for sales; and possession of a controlled substance while armed, violating the condition that he not commit another federal, state or local crime while on supervised release; (2) that on September 30, 2024, the defendant

possessed a firearm and ammunition, in violation of the mandatory condition that he not own, possess, or have access to a firearm or ammunition while on supervised release; and (3) that on September 30, 2024, the defendant unlawfully possessed cocaine base and heroin, in violation of the mandatory condition that prohibited the defendant from unlawfully possessing controlled substances while on supervised release. *Id.* at 2-3.

On January 21, 2025, a grand jury returned an indictment against the defendant for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Case No. 25-CR-13 MMC, Dkt. 1. The defendant has been in custody since September 30, 2024, except for one day of temporary release on September 23, 2025, which Magistrate Judge Kang authorized so that the defendant could attend his father's funeral service in San Francisco. Dkt. 27.

On December 17, 2025, the defendant pleaded guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and admitted to possession of over 2 grams of heroin and over 11 grams of cocaine base. Dkt. 32-33; Plea Agmt. ¶ 2. He also admitted to Charge One of the related Supervised Release Violation petition, except as to the possession of a controlled substance with intent to distribute. *Id.* The Rule 11(c)(1)(B) Plea Agreement before the Court encompasses the new indictment (Case No. 25-CR-13 MMC) and the supervised release violation (Case No. 05-CR-324 JSC). The only facts in dispute for the purpose of determining the applicable Guidelines range are whether the defendant possessed the heroin and cocaine base with the intent to distribute those drugs, rather than for personal use.

## III.    SENTENCING GUIDELINES CALCULATIONS

### A.    The Guidelines calculation for the § 922(g) offense in the PSR is consistent with the calculation agreed to by both parties in the Plea Agreement.

U.S. Probation concurs with the government's calculation of the defendant's Sentencing Guidelines for the felon in possession charge, as shown below:

a.    *Base Offense Level*, U.S.S.G. § 2K2.1(a)(4)(B):
offense involved a semiautomatic firearm capable of
Accepting a large capacity magazine                                      20

b.    *Special Offense Characteristic*: U.S.S.G. § 2K2.1(b)(7)(B)
possession of any firearm or ammunition in connection
with another felony offense                                             +4

c.    *Acceptance of Responsibility*:                                                            -3

d.    **Adjusted Offense Level:**                                                         **21**

The government also agrees with Probation that the defendant's Criminal History Category at the time of the underlying offense on September 30, 2024, was II.  PSR ¶¶ 31-33.  This is based on assessing 3 points for the defendant's prior federal conviction in Case No. 05-CR-324 MMC.

Based on an Adjusted Offense Level of 21 and a Criminal History Category of II, the resulting Guidelines range for the Section 922(g)(1) offense is therefore 41-51 months.

**B.    The U.S.S.G. § 2K2.1(b)(7)(b) Sentencing Enhancement for Firearm Possession in Connection With Another Felony Offense Applies**

U.S.S.G. § 2K2.1(b)(7)(B) is a four-point sentencing enhancement which applies in firearms offenses where the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent or reason to believe that it would be used in connection with another felony offense."  The government and Probation's position is that this enhancement applies; the defendant says it does not because the cocaine base and heroin he admitted to possessing at the same time as he possessed the 9mm pistol and ammunition were for personal use.[1]

The government bears the burden to prove that a sentencing enhancement should be applied by a preponderance of the evidence.  *U.S. v. Riley*, 335 F. 3d 919, 926 (9th Cir. 2003).  The government's position is that the defendant possessed the 11.03 grams of cocaine base and 2.35 grams of heroin with the intent to distribute those substances to others in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

The quantity of cocaine base and heroin that the defendant possessed, his concurrent possession

---

[1] The defendant's Objections to the Draft PSR claim that the government asked the Probation Office to change the alleged felony enumerated in the Draft PSR to possession with intent to distribute a controlled substance.  Not so.  The Draft PSR stated that § 2K2.1(b)(7)(B) applied to the defendant in Paragraphs 3 and 16 and included the 4-point enhancement in its Guidelines calculations.  However, the last sentence of Paragraph 16 stated that the firearm the defendant had pleaded guilty to possessing "was recovered at the scene of another felony offense, namely possession of a controlled substance, in which heroin and cocaine base were recovered from [the defendant] at the time of his arrest."  The government's Objections to the Draft PSR noted that simple possession is a misdemeanor under 21 U.S.C. § 844 unless the defendant has prior drug convictions, and asked Probation to clarify which felony offense it was basing the application of the enhancement upon.  The final PSR states that the qualifying other felony offense is "possession of a controlled substance with intent to distribute to others."  PSR ¶ 17.

UNITED STATES' SENTENCING MEMORANDUM    6
3:25-CR-00013 MMC

of the loaded firearm and magazines, and the lack of any evidence of personal use indicate a plan or intent to distribute narcotics. Possession of "as little as four or five grams may establish an intent to distribute cocaine" where there is "other evidence of a plan or intent to distribute." *U.S. v. Lopez*, 477 F.3d 1110, 111 (9th Cir. 2007). Here, the evidence shows that the defendant possessed a quantity of drugs that vastly exceeded the amount standard for personal use, and that he possessed them in a car in close proximity to a loaded firearm containing his DNA and which he admitted to possessing. While neither the heroin nor the cocaine base were packaged in individual baggies and were still intact, the arresting officer's report noted that based on his experience and knowledge that a typical dose of drugs ranges from .1 to .25 grams in weight, and so the defendant possessed at least 49 to 123 doses of cocaine base and 27 to 69 doses of heroin. Objections by the Defendant, ¶ 3. Furthermore, the officer noted that individuals who transport such quantities of drugs typically arm themselves for protection, and that the area on Berkeley Way where the defendant's car was stopped has a higher-than-normal crime rate related to drug sales and use. *Id*. The defendant claims that he possessed those drugs for personal use, yet there was no indication of cocaine consumption in his post-arrest blood test, even though cocaine can be detected on a blood test up to 72 hours after use. *See United States v. Hardy*, 2026 WL 4487005, at *3 (S.D. Fl. Aug. 23, 2016); *Jaffe v. Brown*, 2015 WL 5569135, at *2 (N.D. Cal. Sep. 21, 2015).[2] His blood tested positive for benzodiazepines and marijuana and alcohol, suggesting he had other ways to self-medicate. PSR ¶ 10. If, as the defendant claims, he was only using heroin and cocaine base for personal pain relief, there is no reason he would need to carry so many doses around with him at one time and to possess a loaded firearm and ammunition to do so. Furthermore, there was no paraphernalia indicating the drugs were for personal use on the defendant or located in the vehicle.

## IV.    RECOMMENDED SENTENCE AND SECTION 3553(A) FACTORS

### A.    Legal Standard

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing set forth by Congress in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate

sentence by calculating the correct sentencing range under the Sentencing Guidelines. *See id*. After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id*. at 991-93.

In arriving at the appropriate sentence, and in accordance with 18 U.S.C. § 3553(a), the Court should consider these factors applicable to the case, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (5) the need to provide restitution to any victims of the offense.

### B.    Probation's Recommendation

Probation concurs with the government's recommendation that the defendant should be sentenced to 46 months' imprisonment for the Section 922(g)(1) charge, to be followed by 3 years of supervised release. PSR Sentencing Recommendation at 3. Probation does not object to the parties' joint recommendation in the Plea Agreement that a 24-month sentence for the supervised release violation in Case No. 3:08-CR-324 MMC should be imposed and should run concurrently with the 46-month sentence, with no additional supervised release period to follow. *Id*.

### C.    Government's Recommended Sentence and 3553(a) Factors

Based upon consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence the defendant to 46 months' imprisonment for the Section 922(g)(1) offense, a $100 special assessment, and forfeiture, followed by 3 years of supervised release; and that the defendant should also be sentenced to a term of 24 months' imprisonment for the supervised release violation, which should run concurrently to the Section 922(g)(1) sentence.

If the Court finds that the U.S.S.G. § 2K2.1(b)(7)(B) special offense characteristic does not

apply, then the resulting Guidelines range would be 27-33 months, and the government requests that the Court sentence the defendant to 30 months' imprisonment for the Section 922(g)(1) offense, a $100 special assessment, and forfeiture, followed by 3 years of supervised release; and that the defendant should also be sentenced to a term of 24 months' imprisonment for the supervised release violation, which should run concurrently to the Section 922(g)(1) sentence.

> **1.      The Nature and Circumstances of the Offense and the Characteristics of the Defendant Make a Sentence of 36 Months' Imprisonment Sufficient but Not Greater than Necessary.**

The nature and circumstances of the offense here make a sentence of 46 months— the exact mid-point of the applicable 41–56-month Guidelines range—appropriate, especially when taking into account the defendant's history and characteristics.

The defendant's actions show that following his release for an extremely serious offense he had no concern for the safety of the public or intention of respecting the terms of his supervised release. The fact that the 9mm pistol containing his DNA was loaded and he and Ms. Chapple were both intoxicated created an especially dangerous situation. It is especially concerning that he committed this latest crime while under supervised release.

The government is also troubled that the defendant's statement accepting responsibility minimizes the culpability and danger of his own actions. See PSR ¶ 14. The defendant stated that he possessed more than 11 grams of heroin and more than 2 grams of cocaine to self-medicate following a painful dirt bike accident, but the blood draw did not support that claim. The defendant explains he tried to heal himself on his own with controlled substances because he has "never been good with doctors or hospitals." *Id*. Given that his arm was in a cast when he was arrested, it would appear that the defendant had access to medical care and had at least one opportunity to obtain legal pain medication; he never says he made any other efforts before resorting to controlled substances. Furthermore, the defendant's statement that he "handled" the firearm in Ms. Chapple's living room but was just "messing around" and "acting like an idiot" and has never carried a firearm since his release does not explain why his DNA was found on the firearm's trigger, trigger guard, slide, *and* on both magazines. Furthermore, it does not explain the defendant's poor decision making to leave Ms. Chapple's apartment with the gun and ammunition, whether it was stashed in her purse or on his person, and to create an even more

volatile situation by getting behind the while drunk and holding heroin and cocaine base.

At the same time, there are mitigating factors that warrant a sentence at the mid-point of the Guidelines range.  The defendant has made a statement which accepts some responsibility for his actions in this case and has expressed a desire in Court and in his pretrial services interview to move on with his life, to get married, find employment, and stay out of San Francisco.  PSR ¶¶ 70-71.  He also has a concrete release plan with Ms. Williams, who has supported him throughout this case. *Id.* ¶ 71.  The government has also taken into consideration the lack of long term supportive or transitional housing when he was released following his sentence in his first federal felony case in June 2024, and the fact that reintegrating into society following decades of technological upheaval with limited work history is a challenging process for an individual with no high school diploma or GED.  *See generally id.* ¶¶ 48-61.  The government hopes that the defendant will take advantage of the resources and structure that supervised release will provide following the end of his forthcoming sentence in these cases.

### 2. The Joint Sentencing Recommendation Provides Adequate Deterrence and Comports with Sentences Imposed in Similar Cases on Similarly Situated Defendants.

A sentence of 46 months serves to achieve specific deterrence.  Because the defendant's prior 22-year sentence did not deter him from committing multiple crimes mere months after his release, another significant prison sentence is necessary to protect the public by preventing additional crime.  If the Court imposes the government and Probation's recommended 46-month sentence, the defendant will spend nearly the next three years of his life in prison, where he cannot put the public at risk by further possession of firearms and distributing controlled substances.

Finally, the joint sentencing recommendation does not create unwanted sentencing disparities between defendants with similar criminal histories who have been adjudicated guilty of similar offenses.  As the PSR notes, the average length of imprisonment for the 412 defendants sentenced in the past four fiscal years under U.S.S.G. § 2K2.1 with a final offense level of 21 and a Criminal History Category of II who did not receive a § 5K1.1 substantial assistance departure was 40 months, and the median length was 41 months.  ¶¶ 98-101.  This defendant has an unusually violent and serious underlying conviction compared to typical defendants in Criminal History Category II.  The fact that he committed VICAR Murder, served a 22-year sentence, and sought access to firearms and drugs within 3 months of his

release warrants a higher sentence in the mid-point of the applicable Guidelines range rather than at the lower end of it.

**CONCLUSION**

Consistent with the plea agreement, in full consideration of the goals of sentencing, and for the reasons stated herein, the government respectfully recommends that the Court sentence the defendant to a term of imprisonment of 46 months, a special assessment in the amount of $100, and forfeiture, to be followed by 3 years of supervised release. The government also respectfully requests that the Court sentence the defendant to 24 months' imprisonment for the supervised release violation in Case No. 05-CR-324 MMC, to run concurrently with the sentence in Case No. 25-CR-13 MMC for being a felon in possession of a firearm and ammunition.

DATED: March 4, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

JEAN FUNDAKOWSKI
Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM   11
3:25-CR-00013 MMC